JOSEPH LAVINE, as Administrator of the Goods, Chattels and Credits of HENRY J. LAVINE, Deceased, Plaintiff, *v.* INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, Defendant.[*]

Supreme Court, Schenectady County, June 15, 1931.

*Schaffer & Sevits*, for the plaintiff.

*Ainsworth & Sullivan*, for the defendant.

[*] Affd., 234 App. Div. 906.

ROGERS, J. The case is not free from doubt. Neither side seemed disposed to place the court in possession of all of the facts. Each seems to rely upon the absence of proof which it claims the other ought to have presented, rather than upon the presence of proof justifying recovery in his favor.

The policy was prepared by the defendant, and in case of ambiguity must be construed against it. (*Marshall* v. *Com. Travelers' Mut. Acc. Assn.*, 170 N. Y. 434; *Michael* v. *Prussian Ins. Co.*, 171 id. 25; *Bushey & Son* v. *American Ins. Co.*, 237 id. 24.) The policy is denominated " Automobile garage public liability and property damage policy." In ·addition to that which its name implies, it contains provisions indemnifying the assured from liability for persons injured or killed by automobiles owned, maintained or used by the assured. It contains provisions for other coverage which, to be operative, however, must be invoked by the declarations of the assured in his application for the policy. The application is made a part of the policy and must be read with it. The provisions in the policy and application are such as to confuse the ordinary layman.

The policy was originally issued on October 1, 1928, to one Potolski, doing business as " West End Auto Sales " at 225 North Allen street, Albany, N. Y., the business being "Auto Sales." On December 7, 1928, a rider was attached continuing the policy in force for the benefit of Adolf C. Englert, " doing business as Auto Exchange, 225 No. Allen Street, Albany, New York," and in the declaration attached to the policy the name George W. Potolski was scratched out and over it the name of Adolf C. Englert inserted, and the name " West End Auto Sales " was scratched out and over it the name "Auto Exchange " inserted. On December 20, 1928, a rider was attached correcting the name of the assured to read "Adolf C. Englert, doing business as Auto Exchange," instead of " George W. Potolski, doing business as West End Auto Sales." This was the last change in the policy, and it is to be noted that while the first change called Englert's business auto exchange and gave the address 225 North Allen street, Albany, N. Y., the second change gives the name under which Englert was doing business as auto exchange, but does not state the address. There is no doubt that the public liability feature of the policy is limited to damage occurring at 225 North Allen street, Albany. The question is whether the policy covers damages caused by Englert's automobile sent by him from the Schenectady branch of his auto exchange business to procure automobiles for use in his business?

The policy provides as follows: " To indemnify the assured against loss from the liability imposed by law upon the assured for such injuries resulting from (a) The maintenance and operation of an

automobile sales agency, garage or station, including repair shops; or (b) the ownership or maintenance or use of any automobile for any purpose usual to the assured's operations as described in the declarations, including private pleasure use."

Under (b) the ownership, or even the use, or of the maintenance of any automobile for any purpose usual to the assured's operations in conducting an auto exchange business is covered, subject to the condition in the policy in the paragraph entitled " Locations Covered." Certainly, sending an automobile to get other automobiles for the purpose of sale may be considered as a purpose usual to the assured's operations. Under the paragraph " Locations Covered " is this language: " This policy shall cover such injuries so sustained by reason of any automobile while being operated, or used within the United States of America, or the Dominion of Canada. It shall also cover such injuries so sustained elsewhere, caused by employees of the assured sent from the location described herein and whose duties require their presence elsewhere while in the service of the assured in connection with the business operation described herein."

It will be noted that the policy seems to differentiate between an automobile used in the United States or Canada and one used elsewhere by providing that as to the latter location the liability only attaches if the employee is sent out from the location described in the policy.

In the 2d paragraph of the policy the indemnification also covers the assured in his " private pleasure use " of an automobile. It is stated in declaration item 4 that the assured is an individual. There is a provision in the application for coverage for taxicabs, omnibuses, sightseeing automobiles or jitneys, and one for renting of automobiles for transportation and delivery of goods and one for elevators. As to the public liability feature of the policy, the taxicab and jitney feature and the elevator provision, the location is specifically and expressly named and provisions in the policy referring to location are in connection with these coverages. As to automobiles, the policy is not specific in reference to location. It seems to be enough, under the provisions of the policy, if the automobiles are used in connection with the business. Apparently the assured conducted the Auto-Exchange, so called, at 225 North Allen street, Albany, and a branch at Schenectady. It was an individual enterprise. Apparently the assured kept some cars in Albany and some cars in Schenectady for sale and was dealing and trading under the name Auto Exchange in both places. The Studebaker touring car involved in the accident was sent out by the assured from Schenectady. Evidently the assured believed

that the policy covered his Schenectady operations, for he filed with the defendant on its form notice of the accident in which he gave the name of the insured as "Auto Exchange" and the address 219 Nott terrace or 300 Schenectady street, Schenectady, N. Y., and it is significant, as appears from the next question and answer, that he had no other insurance in respect to the risk in question. In the report of the accident in answer to the question " For whom and for what purpose was the automobile being used at the time accident occurred? " is written, " See other side," and on the other side of the blank the assured under the heading, " Statement of Driver," wrote, " See attached statement." If this statement had been produced on the trial we might have been enlightened as to the purpose the automobile was being used for at the time. The defendant did not produce it, claiming that it had been lost or mislaid. Construing the policy strictly against the defendant, I am of the opinion that the policy covered the liability of Englert at the time of the accident in which plaintiff's intestate was killed.

The Fourth Department has recently (*Parry* v. *Maryland Casualty Co.*, 228 App. Div. 393, 395) enunciated the following doctrine: " Since defendant by its answer assumed what perhaps was the unnecessary burden of proving plaintiffs' custody and responsibility [citing cases], and since that burden was not met, we must conclude that the loss was within the coverage of the policy." In defendant's brief it is contended that the allegation in its answer which might be said to invoke this rule was couched in language expressing conclusions, rather than facts. If this is so, it is a matter concerning which the pleader should not be heard to assert. I think, however, that the allegations that the death did not occur " under the circumstances that brought such injuries and death within the indemnification expressed in said policy," inasmuch as the policy is a part of the pleadings, is another way of saying that the automobile was not being used in the business of the assured, or that it was being driven at the time by a person under sixteen years of age, or in a speed test, etc. In other words, instead of alleging a fact, or facts, which avoided the policy, the pleader by its general allegation virtually said to the plaintiff, this accident is not within the coverage of the policy, because some one or more of the facts mentioned in the policy existed at the time of the accident which renders the policy inoperative, and if you want to know which fact or facts I refer to, you can move to make the allegations more definite and certain, or demand a bill of particulars. The allegation combines a conclusion of fact and a conclusion of law. It is proper to allege a conclusion of fact, rather than the evidence which supports such conclusion.

The defendant evidently for a period of months construed the policy to cover the liability in question. It received notice of the accident from the assured on one of its blanks shortly after the accident occurred. In this notice, plaintiff's Exhibit 5, the insured is stated to be "Auto Exchange, 219 Nott Ter. or 300 Schenectady Street, Schenectady, New York." Defendant's superintendent of claims, who had charge of the Albany claim office, McKie, shortly after the receipt of the notice, investigated the accident. He talked with Englert and the driver of the car and with Potolski. He must have learned at that time that the automobile was sent out from the Schenectady branch office. The disclaimer, upon the ground that the policy did not cover the accident, was not served until September thirteenth. In the meantime the defendant without reservation or qualification assumed the defense of the action by obtaining an extension of time to answer. It was the duty of the defendant to disclaim liability within a reasonable time after acquiring knowledge of the facts upon which the disclaimer was to be predicated. McKie went to Schenectady, saw Englert's place of business there, talked with him and the chauffeur, who drove the car in question, and with the former owner of the Albany location, and was informed by the notice of accident that the "Auto Exchange" was being conducted at Schenectady. He procured affidavits from the various witnesses. Having knowledge that the automobile was sent out from the Schenectady branch the company should have disclaimed liability promptly in order to make the disclaimer effective, otherwise it is estopped to disclaim liability. It is probably true that Englert was not prejudiced by the defendant's obtaining an extension of time to answer. The prejudice that Englert suffered was in being deprived for a period of months of the opportunity to settle the claim for a sum less than the amount of the verdict. The policy provides that the assured shall make no settlement of any claim arising under it. If Englert had been promptly notified by the defendant that it disclaimed liability he might have procured by acting promptly an advantageous settlement. This possibility he was deprived of by the defendant's failure to notify him of its position for weeks and months after it had knowledge of the fact that the automobile was not sent out from the Albany location.

A verdict is directed in favor of the plaintiff in amount $5,379.65, with interest thereon from February 16, 1930, and the plaintiff is entitled to judgment thereon, with costs.