**KEARNS COAL CORPORATION v. UNITED STATES FIDELITY & GUARANTY CO.**

No. 167.

Circuit Court of Appeals, Second Circuit.

March 3, 1941.

Writ of Certiorari Denied May 26, 1941.

See 61 S.Ct. 1099, 85 L.Ed. ——.

Lemuel Skidmore, of New York City (Putney, Twombly & Hall and Howard F. Ordman, all of New York City, on the brief), for plaintiff-respondent.

William Dike Reed, of New York City (William J. McArthur, of New York City, on the brief), for defendant-appellant.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This action has been brought to determine the ultimate responsibility, as between two insurance companies, for damages paid for personal injuries inflicted December 31, 1933, on a child, William Pasley, by the negligent operation of a truck owned by the Newton Contracting Company, driven by George Williams, an employee of the Newton Company, and used on the day of the accident in delivering coal in New York City for plaintiff Kearns Coal Corporation. At that time there was in effect a policy of automobile liability insurance issued by defendant herein, United States Fidelity and Guaranty Company, to the Newton Company, and another like policy issued by the Travelers Insurance Company to plaintiff. Plaintiff sues herein for Travelers' benefit to recover the sum paid to settle its liability, while defendant, in turn, counterclaims for what it paid to settle the claims against the Newton Company and Williams.

These amounts became fixed as a result of a suit brought in the Supreme Court of New York in 1934 by William Pasley and his mother, Anna Pasley, to recover for the injuries and damages sustained. A first trial in 1935 resulted in plaintiffs' verdicts of $100,000, which the court set aside; on appeal the court refused to dismiss the complaint, Pasley v. Stephens Fuel Co., 249 App.Div. 806, 293 N.Y.S. 512. Meanwhile, on January 6, 1937, Williams and the Newton Company obtained their release and discontinuance of the action against them on payment of $15,000, which was advanced by defendant herein and for which it brings its counterclaim. Another trial resulted in a judgment May 12, 1937, for the Pasleys against plaintiff herein for $36,855.02, which was compromised and satisfied on July 9, 1937, by the payment of $15,000. Travelers advanced this sum to plaintiff upon the latter's agreement to prosecute this action in Travelers' behalf.

The case below was tried to the jury, which rendered a general verdict in plaintiff's favor and also answered certain special questions (hereinafter referred to) in accordance with plaintiff's contentions. Appeal from the resulting judgment for plaintiff requires a consideration of the two insurance contracts to determine the actual agreements of the insurers, and of the further questions of a claimed estoppel against defendant because it assumed defense of the state action for a time, and of the extent to which the state judgment is res judicata here.

Plaintiff's claim is predicated on that part of Section II(1) of defendant's policy, issued to "Newton Contracting Co., Inc. &/or The Hastings Pavement Co.," which reads: "The unqualified word 'Assured' includes not only the Named Assured but any other person or organization while using any such automobile, including also any other person or organization responsible for the use thereof, provided the disclosed and actual use of such automobile is 'Pleasure and Business,' or 'Commercial,' each as defined herein, and further provided that such use is with the permission of the Named Assured. * * *" But by Item 10(b) of "Declarations," "the term 'Commercial' when used is defined as the transportation or delivery and the loading and unloading of goods or merchandise in direct connection with the Assured's occupation as expressed in Item 3." And Item 3 states: "The Assured is (a) (1) Paving Contractor (2) Mfg. Paving Blocks."

The truck in question, one of those described in the policy, was being used at the time of the accident, not in connection with the contracting or paving block manufacturing business, but in the delivery of coal sold by plaintiff. Thus, according to the unequivocal definition, the use was not "Commercial" within the special meaning of the policy; and the word "Assured" in the policy is not under such circumstances to be interpreted to include other than the Named Assured. Therefore, the liability clauses of the policy operate, in connection with this accident, only for the benefit of the Newton Company, not for that of plaintiff; and the claim of the latter, in so far as it is based on the policy alone, must be denied.

There is a second reason why this is so. Section IV(b) of defendant's policy excludes any obligation of the issuer "under any of the above Agreements while any disclosed automobile is rented to others." To avoid the effect of this provision, as well as liability on the counterclaim consid-

ered below, plaintiff maintained that it did not have "custody, control, and management" of the truck at the time of the accident, and the jury so found, both by its general verdict and in answer to a specific question. The reasonableness of the finding is not here material. Had plaintiff had control of the truck, it would necessarily have followed under the testimony that the truck was rented, and all liability under the policy was excluded; but if plaintiff's contention and the jury's finding are to control, then plaintiff was not "using" or "responsible for the use" of the truck so as to come within the definition of an unnamed Assured quoted above from Section II(1) of the policy. Plaintiff certainly was not a gratuitous bailee. It was either using the truck under an agreed rental or else hiring the Newton Company to undertake deliveries on its behalf, with control over the truck's operation and responsibility for its use. In neither event can plaintiff's recovery be maintained on the policy issued by defendant.

Defendant relies on still another defense based on a "concurrent insurance" clause in its policy which restricts the "Named Assured" to only proportionate coverage where there is concurrent insurance, but also provides that "If any other Assured has valid and collectible insurance against a loss also covered by this Policy, such other Assured shall not be insured under this Policy." Plaintiff, in turn, relies on like provisions in the Travelers policy, including, too, an additional clause on a rider for "Hired Automobiles" limiting the insurance therein given, when its named assured (plaintiff) is entitled to other coverage, to "excess insurance over and above the amount of such valid and collectible insurance." These clauses, as the precedents show, afford excellent opportunity for circular reasoning: if or since Fidelity is not bound, Travelers is; and vice versa. In view of what we have held above, we need not decide this troublesome issue further than to say that of the several theories extant two at least favor the defendant: one that the policy date controls and defendant's policy, being later in date, though seemingly a renewal of some earlier policy, covers only what the Travelers policy did not cover; and the other that, since protection of the named assured was the chief purpose of each contract, each insurer should bear primary responsibility for losses of his named assured and only secondary responsibility, after primary funds have failed, for other losses. New Amsterdam Casualty Co. v. Hartford Accident & Ind. Co., 6 Cir., 108 F.2d 653; Michigan Alkali Co. v. Bankers Ind. Ins. Co., 2 Cir., 103 F.2d 345; Gutner v. Switzerland General Ins. Co. of Zurich, 2 Cir., 32 F.2d 700; but see Continental Cas. Co. v. Curtis Pub. Co., 3 Cir., 94 F.2d 710; Commercial Cas. Ins. Co. v. Hartford Acc. & Ind. Co., 190 Minn. 528, 252 N.W. 434, rehearing 190 Minn. 528, 253 N.W. 888; Maryland Cas. Co. v. Bankers' Ind. Ins. Co., 51 Ohio App. 323, 200 N.E. 849.

■ Plaintiff contends, however, that defendant is estopped to deny its ultimate liability because it assumed the defense of the Pasley suit on plaintiff's behalf. When this suit was brought, plaintiff forwarded the summons served upon it to Travelers, which declined to defend, and then, at Travelers' suggestion, sent it to defendant, which also declined. Twice again Travelers, and once again defendant, returned the summons. But on February 6, 1934, when defendant received the summons a third time with a letter from Travelers stating that the last extension of time to answer would expire February 12, it yielded, filed a notice of appearance for plaintiff, and remained in charge of the defense for about eight months. During this time a pre-trial examination was had of plaintiff's president, Mr. George Kearns, in which he testified that he had supervision of the truck at the time of the accident. This testimony led to a final disclaimer of liability and withdrawal by defendant on October 24, 1934, after which Travelers took up the defense and continued it throughout the two trials and until final judgment. Plaintiff claims particular prejudice because defendant's lawyer did not advise Kearns of his legal rights with reference to the question of supervision of the truck and did not object to the questions on the examination as calling only for a conclusion of the witness. This issue was also submitted to the jury below. The jury found expressly that defendant had knowledge of all the circumstances relative to the custody and control of the truck and the conditions of the Travelers policy at the time it assumed the defense, and that plaintiff was prejudiced and its position adversely affected by the defense. We think, however, that under the conditions here present this did not form an issue of fact for the jury.

Traditionally for an estoppel we should look for an admission or representation by

one person designed and effective to influence the conduct of another, to the latter's irremediable prejudice. Baker v. Union Mutual Life Ins. Co. of Maine, 43 N.Y. 283, 284, 289; Draper v. Oswego County Fire Relief Ass'n, 190 N.Y. 12, 16, 82 N.E. 755. Here defendant was faced with a dilemma forced upon it by the refusal of plaintiff and Travelers to defend the Pasley suit. That it yielded while Travelers stood firm is hardly an admission or representation of liability to plaintiff or a waiver of any rights. Mason-Henry Press v. Aetna Life Ins. Co., 211 N.Y. 489, 105 N.E. 826; Joseph Gordon, Inc., v. Massachusetts Bonding & Ins. Co., 229 N.Y. 424, 128 N.E. 204; Fidelity & Casualty Co. of New York v. Stewart Dry Goods Co., 208 Ky. 429, 271 S.W. 444, 43 A.L.R. 318. In Weatherwax v. Royal Indemnity Co., 250 N.Y. 281, 287, 165 N.E. 293, a later right of withdrawal was recognized; though compare Miller v. Union Indemnity Co., 209 App. Div. 455, 204 N.Y.S. 730. But be that as it may, no prejudice resulted to plaintiff from the mere undertaking of the defense; that must be found, if at all, from the conduct of defendant's lawyer at Kearns's examination.

It is true that, where the insurer has retained control of the insured's defense to final judgment or to a settlement, many authorities hold that prejudice is presumed or that the assumption of control is a waiver of rights or an election. Royle Min. Co. v. Fidelity & Casualty Co., 126 Mo.App. 104, 103 S.W. 1098; Malley v. American Indemnity Corp., 297 Pa. 216, 146 A. 571, 81 A.L.R. 1322; Humes Const. Co. v. Philadelphia Casualty Co., 32 R.I. 246, 79 A. 1, Ann.Cas.1912D, 906; see 81 A.L.R. 1357. While there are cases the other way, American Cereal Co. v. London Guarantee & Acc. Co., 7 Cir., 211 F. 96; Lunt v. Aetna Life Ins. Co., 261 Mass. 469, 159 N.E. 461, the New York decisions seem to tend that way without precise statement of the rule. Rosenwasser v. Globe Indemnity Co., 224 N.Y. 561, 120 N.E. 875; Gerka v. Fidelity & Casualty Co. of New York, 251 N.Y. 51, 167 N.E. 169; Rosenbloom v. Maryland Casualty Co., 153 App.Div. 23, 137 N.Y.S. 1064; Utterback-Gleason Co. v. Standard Accident Ins. Co., 193 App.Div. 646, 184 N.Y.S. 862, affirmed 233 N.Y. 549, 135 N.E. 913. But however desirable such a rule may be as protecting an insured against the difficulty or impossibility of showing prejudice from a merely listless defense, its reason does not apply when the insurer has withdrawn at a time and under circumstances where the insured is left an adequate opportunity to defend. Hence in the most nearly analogous case that we have found it was held that prejudice to the insured must be shown and that mere delay in making the disclaimer was not enough. Lavine v. Indemnity Ins. Co. of North America, 260 N.Y. 399, 183 N.E. 897, reversing 234 App.Div. 906, 254 N.Y.S. 1000, 142 Misc. 422, 254 N.Y.S. 804, 809; Kitsap County Transp. Co. v. Pacific Coast Cas. Co., 67 Wash. 297, 121 P. 457; see also McAleenan v. Massachusetts Bonding & Ins. Co., 232 N.Y. 199, 133 N.E. 444; Glens Falls Portland Cement Co. v. Travelers' Ins. Co., 162 N.Y. 399, 405, 56 N.E. 897.

We do not think prejudice could properly be shown from the circumstances surrounding Kearns's pre-trial examination. If the questions eliciting his testimony actually called for a conclusion of the witness, an objection to them goes to the competency of a lay witness to express an opinion, Merritt v. Briggs, 57 N.Y. 651, and therefore was properly to have been made not at the original examination, but when the testimony was offered at the trial. New York Civil Practice Act, § 305; New York Civil Practice Rule 129; Kramer v. Kramer, 80 App.Div. 20, 80 N.Y.S. 184; Guenther v. Ridgway Co., 159 App.Div. 74, 143 N.Y.S. 961. Apparently objection could have been made only at the trial, Brown v. Bedell, 232 App.Div. 158, 249 N.Y.S. 277; actually it was then made and was overruled as to some of the questions while sustained as to others. If the objection went only to form, no real prejudice resulted from the failure to object, for it is obvious that the questions could and would have been reframed to elicit substantially the same testimony. So far as the claim is based on the deliberate failure of counsel to protect his witness, it rests on dangerous ground. The importance of this issue not only in the negligence case, but as between the two insurance companies, had been made most apparent to plaintiff; Kearns, who was not only plaintiff's president, but also Newton's secretary, had discussed the matter with other officials of the companies; at the later trials he reaffirmed his testimony on his prior examination. His obligation was to tell the truth; that he tried to do so is shown by the detail of his examination when he said that he issued "instructions" to Williams the driver, and otherwise dis-

closed that he had in mind items of fact as to what he did with reference to directing the operation of the truck and which are not challenged even now. We think defendant cannot be held liable for failure of its counsel in effect to coach the witness in testimony favorable to Travelers' claims.

Defendant's counterclaim, based on a policy provision subrogating it to all of Newton's rights in the premises, asserts Newton's right of indemnification, against plaintiff as primary tort-feasor, for whatever damages Newton had had to pay, by virtue of N. Y. Vehicle and Traffic Law, Consol.Laws c. 71, § 59, as owner of the truck. American Lumbermen's Mutual Cas. Co. of Illinois v. Trask, 238 App.Div. 668, 266 N.Y.S. 1, affirmed 264 N.Y. 545, 191 N.E. 557. But there are difficulties in the way of its recovery here. Defendant's payment covered also the release of Williams, for whom no indemnity can be claimed, and there is nothing to show what part of the sum was paid on his behalf. Perhaps the claim against Williams was valueless, but there was no showing of that fact and hence no proof of the damages to which defendant might be entitled. But even if this difficulty could be surmounted, there is the finding of the jury herein that the truck was not under the custody, control, or management of plaintiff at the time of the accident. This finding was made on conflicting evidence arising from the fact that the truck had completed its deliveries of coal for plaintiff for the day and was returning to a storage garage designated by Newton. Defendant's substantial answer is, however, that the issue of control of the truck was settled by the state court judgment. This brings us to the final problem of the case.

Defendant's contention in short is that it can rely on the doctrine of res judicata even though it or its principal, Newton, was not a party to the judgment. It says that judgment for the Pasleys against plaintiff herein necessarily determined that plaintiff did have control of the truck at the time of the accident, and that plaintiff cannot again raise that issue, even for the purposes of this counterclaim. That judgment, introduced in evidence, constituted a finding of plaintiff's control, and the court's instructions to the jury in that action excluded any question of joint control with Newton. Hence, except for the difference in parties, the issue appears identical with that here presented.

The legal question turns on how far the doctrine that estoppel by judgment must be mutual still applies in a NewYork case. By "a well-recognized apparent exception" to the mutuality rule, one derivatively liable may plead in his defense a judgment for the one primarily liable in a previous action by the same plaintiff. Good Health Dairy Products Corp. v. Emery, 275 N.Y. 14, 9 N.E.2d 758, 112 A.L.R. 401; New York & Queens Transit Corp. v. Brooklyn Union Gas Co., 256 App.Div 728, 12 N.Y.S.2d 1, affirmed 283 N.Y. 732, 28 N.E.2d 964; Portland Gold Mining Co. v. Stratton's Independence, 8 Cir., 158 F. 63, 16 L.R.A.,N.S., 677; Giedrewicz v. Donovan, 277 Mass. 563, 179 N.E. 246; Mims v. Bennett, 160 S.C. 39, 158 S.E. 124, 78 A.L.R. 365. It has recently been authoritatively settled, however, that the apparent exception does not extend to the further situation where one relies on a previous judgment to which he was not a party as a basis for his claim or counterclaim, instead of merely as a defense. Elder v. New York & Pennsylvania Motor Express, Inc., 284 N.Y. 350, 31 N.E.2d 188, reversing 259 App.Div. 380, 19 N.Y.S.2d 553. A spirited dissent by two of the judges serves to emphasize the care with which the majority sought to delimit the rule. See also Haverhill v. International Railway Co., 217 App.Div. 521, 217 N.Y.S. 522, affirmed 244 N.Y. 582, 155 N.E. 905; Bisnoff v. Herrmann, 260 App.Div. 663, 23 N.Y.S.2d 719; 8 Brooklyn L.Rev. 224; 7 ibid. 113; 10 Fordham L.Rev. 105. Liberty Mut. Ins. Co. v. George Colon & Co., 260 N.Y. 305, 183 N.E. 506, apparently represents a peculiar situation in which, by statute, certain rights of one not a party to an action are determined by the judgment rendered therein. 46 Harv.L.Rev. 858.

We are not aware that the courts of other jurisdictions overstep the limits of the rule as stated in the Elder case. Compare Lunt v. Aetna Life Ins. Co., supra, and the articles cited. Cases such as Washington Gaslight Co. v. District of Columbia, 161 U.S. 316, 16 S.Ct. 564, 40 L.Ed. 712, are not in point to the contrary, but merely illustrate the rule stated above. In the cited case recovery in tort against the District for negligent maintenance of gas conduits was held conclusive against the Gaslight Company, which was ultimately liable and which had had notice and an opportunity to defend the original suit. Here Newton was not ultimately liable on behalf of plain-

38

tiff and had no occasion to defend the Pasley suit. Compare also Oceanic Steam Navigation Co. v. Campania Transatlantica Espanola, 144 N.Y. 663, 39 N.E. 360, and The No. 34, 2 Cir., 25 F.2d 602, certiorari denied T. Hogan & Sons v. L. Boyers' Sons Co., 278 U.S. 606, 49 S.Ct. 11, 73 L. Ed. 533. Had Newton remained a party defendant to the Pasley suit, its relation (and therefore defendant's) to plaintiff, its then co-defendant, could have been there adjudicated after appropriate pleading, New York Civil Practice Act, § 264; but Newton was no longer a party when the Pasley judgment was rendered.

We conclude that no recovery can be had on either the claim or counterclaim. The judgment is reversed for dismissal of the action, with costs to the appellant.